**SO ORDERED.**

**SIGNED this 08 day of June, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

**DEAN HARDWOODS, INC.,**                         CASE NO. 08-05404-8 -JRL

                                                                                  Chapter 11

**DEBTOR.**

### ORDER GRANTING IN PART AND DENYING IN PART
### DEBTOR'S MOTION TO MODIFY PLAN

This case is before the court on the debtor's motion to modify its chapter 11 plan. A hearing took place in Raleigh, North Carolina on May 7 and was continued to and concluded on May 17, 2010.

On August 11, 2008, debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code ("Code"). On December 9, 2008, debtor filed a proposed chapter 11 plan. That proposed plan was objected to by Huntington National Bank ("Huntington") and U.S. Bancorp Equipment Finance ("Bancorp"). On March 13, 2009, debtor filed an amended chapter 11 plan and disclosure statement ("Amended Plan"). Huntington objected to the Amended Plan on March 27, 2009 because the plan payments were not to begin until the "15th day of the sixth full month following the Effective Date of the Plan . . . ." On April 28, 2009, SunTrust also objected to the Amended Plan. In its objection, SunTrust alleged that the Amended Plan failed to comply with the Code, was not proposed in good

faith, and unfairly discriminated against SunTrust. A hearing was held on June 9, 2009 and the Amended Plan was confirmed based on the consensual resolution of the objections made by SunTrust and over the persistent objection of Huntington. The court found, despite the objection, the proposed plan was equitable and confirmed it on that basis. On February 19, 2010, debtor filed a motion to modify its plan.

In the motion, debtor alleges it should be allowed to modify the confirmed plan because substantial consummation has not occurred. Substantial confirmation of the plan has allegedly not occurred because, at the time the motion was filed, no payments had been made to the class of unsecured creditors or several leasehold creditors including Huntington, Irwin Finance, National City Commercial, TCF, and Bancorp. In the alternative, debtor argued that even if substantial consummation had occurred this court should allow modification because of changed circumstances and through the application of the "good faith" test.

Huntington filed a response in opposition on March 11, 2010. Huntington requested the court to order the debtor to: (1) cure post-confirmation past due amounts on the three leases, (2) resume regular monthly lease payments immediately, and (3) pay balances owed under the Confirmation Order dated July 30, 2009. To support the relief sought, Huntington asserted it has not received payments on either of the outstanding leases since December 7, 2008 and the debtor has kept the equipment. The equipment is being used in the debtor's daily operations and the value of the equipment is diminishing. Ultimately, the debtor is receiving the benefit of the lease agreements while Huntington is not.

SunTrust filed a response in opposition on March 15, 2010. In that response, SunTrust requests that the court deny debtor's motion to modify the plan because to allow the modification

would leave SunTrust without adequate protection and allow the debtor to liquidate an additional $846,055 of inventory that is used as collateral to secure SunTrust's loan. SunTrust alleges that since the case was filed, its collateral has been reduced in value by over $1.8 million and the debtor continues to operate by liquidating SunTrust's collateral to create funds to pay operating expenses.

## ANALYSIS

Post-confirmation modification of a confirmed chapter 11 plan is provided for in 11 U.S.C. § 1127(b). Section 1127(b) reads:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified under section 1129 of this title.

11 U.S.C. § 1127(b). See United States v. Bullion Hollow Enterprises, Inc. (In re Bullion Hollow Enterprises, Inc.), 185 B.R. 726, 728 (W.D. Virginia 1995) (debtor may modify a plan at any time after confirmation of such plan and before substantial consummation). Only the reorganized debtor or a proponent of the plan may bring a motion for modification. In re Charterhouse, 84 B.R. 147, 151 (D. Minnesota 1988) (citing Goodman v. Phillip R. Curtis Enterprises, Inc., 809 F.2d 228, 234 (4th Cir. 1987)). "[T]he language of the statute creates a window during which the parties and the bankruptcy court may make changes [to] the confirmed plan." Metropolitan Life Insurance Company v. Olsen (In re Olsen), 861 F.2d 188, 190 (8th Cir. 1988). The window closes once the plan is substantially consummated. Id.

Substantial consummation, as defined in 11 U.S.C. § 1101(2), requires the following to have occurred:

3

> (A) [The] transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) Assumption by the debtor or the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) Commencement of distribution under the plan.

There cannot be substantial consumnation without all three elements of the definition being satisfied. In re Charterhouse, 84 B.R. at 152 (citing In re Gene Dunavant and Son Dairy, 75 B.R. 328, 332 (M.D. Tenn. 1987)). Whether there has been substantial consummation of a plan is a question of fact and should be determined on a case-by-case basis. Id. (citing Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen), 66 B.R. 104, 106 (9th Cir. BAP 1986)). The proponent of the modification has the burden of proving that the plan has not been substantially consummated. Bullion Hollow, 185 B.R. at 728.

The Code's definition may seem clear, but there have been varying opinions on how to treat payments owed to creditors under a confirmed plan. There are two schools of thought on the issue. The first follows In re Heatron, Inc., 34 B.R. 526 (W.D. Missouri 1983), which held payments to creditors that were owed by the debtor were property under subsection (A) of the definition of substantial consummation in the Code. As such, all or substantially all of the payments must be made for a plan to be substantially consummated.[1] See In re Jorgensen, 66 B.R. 104 (substantially consummated means more than half way and more than a mere preponderance).

The second school of thought is set forth in Bullion Hollow, which says, "almost all of the courts that have dealt with this issue [referring to substantial consummation] since the rendering of

---

[1] In Heatron the debtor had paid 53% of the required payments to creditors and the court held 53% of the payments did not constitute "substantially all" of the payments. Thus, substantial consummation had not occurred and the debtors were allowed to modify their plan.

the Heatron decision have refused to follow the Heatron analysis [on whether payments to creditors should be construed under subsection (A) or (C)]." Bullion Hollow, 185 B.R. at 728. See In re Hayball Trucking, Inc., 67 B.R. 681 (Bankr. E.D. Mich. 1986); In re Earley, 74 B.R. 560 (Bankr. C.D. Ill. 1987);  In re Bedford Springs Hotel, Inc., 99 B.R. 302 (Bankr. W.D. Pa. 1989); In re Burlingame, 123 B.R. 409 (Bankr. N.D. Okla. 1991).  Instead, those courts have held "payments to creditors are not to be considered transferring property under subsection (A), but instead, fall under subsection (C) which only requires that the distribution of the payments to have commenced." Bullion Hollow, 185 B.R. at 729.

This court finds the appropriate rule in a blending of these two approaches.  First, this court disagrees with Heatron that distributions to creditors fall under subsection (A) of the § 1101(b). Instead, this court agrees with Bullion Hollow that subsection (C) is the controlling subsection when payments to creditors are at issue. However, this court agrees with the Heatron court that:

> [t]he word substantial means something **more than halfway**, more than a mere preponderance.  When used with the word 'all'… there is a *suggestion* of completeness.  (emphasis added).

Heatron, 34 B.R. at 529.  See C.T. Investment Co. v. Commissioner, 88 F.2d 582, 584 (8th Cir. 1937) (transfer of $78,000 out of $138,000 [56%] of assets … did not constitute "substantially all of properties"); Cf. U.S. v. Cleveland, P. & E.R. Co., 42 F.2d 413, 416 (6th Cir. 1930) ('substantially all the stock' cannot be interpreted as meaning any particular percentage, but must be construed according to the facts of the particular case).

While it is true that payments to creditors under a confirmed chapter 11 plan fall under subsection (C) of the definition of substantial consummation, this court must determine whether payments to creditors have commenced under the confirmed plan.  "There is no percentage or

specific number of payments needed to have been paid in order to qualify as 'commenced.'" Bullion Hollow, 185 B.R. at 729 (citing In re Scotland Guard Services, Inc., 139 B.R. 264, 266 (Bankr. D. Puerto Rico 1991). Applying the plain meaning approach of statutory interpretation, it seems that commencement should mean not just the beginning of payments to a single creditor, but the commencement of distribution to all or substantially all creditors. This line of reasoning follows the practice of the Eastern District of North Carolina[2] and follows the rationale that substantial means something more than half.

In the case of In re Litton, 222 B.R. 788 (Bankr. W.D.Va. 1998), the court found the chapter 11 debtor's plan had not been substantially consummated where only one payment had been made under the confirmed plan; payments to other secured and unsecured creditors were required. That court also distinguished its case from Bullion Hollow "where the Debtor had made payments to all secured creditors under the plan." In re Litton, 222 B.R. at 789, 790.

This case is analogous to Litton. The debtor has begun making plan payments to some secured creditors, but has yet to make payments to all classes included in their plan. By applying the principles as recited above, this court finds that substantial consummation has not occurred. According to the debtor's post confirmation report filed for the quarter ending March 31, 2010, exactly half of the classes have not received a payment; in other words, the distribution required under the confirmed plan has not commenced for six of the twelve enumerated classes. Without more payments to classes of creditors in the confirmed plan and while continuing to make quarterly fee payments, there has not been substantial consummation of a confirmed plan.

---

[2] Local practice is that substantial consummation does not occur until a debtor has made at least one payment (or executed a promissory note and/or security document) to each class in accordance with its confirmed plan. It is well known that the Bankruptcy Administrator, in this district, requires quarterly fees be paid until substantial consummation and routinely objects if the debtor moves to stop paying fees before payments have been made to each class of creditors under a confirmed plan.

6

Turning to the merits of the motion, § 1127 requires proposed plan modifications to meet the requirements of §§ 1122 and 1123.  See 11 U.S.C. § 1127 supra at p. 3.  Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, ... such plan as modified, unless ... such holder changes such holder's previous acceptance or rejection.  11 U.S.C. § 1127(d).  Before a court may confirm a proposed modified plan, the requirements of § 1129 must be met. 11 U.S.C. § 1127.

SunTrust originally consented to the debtor's plan; however, it objects to the debtor's proposed modified plan.  Thus, the court must find the plan satisfies § 1129(b) before it may confirm the plan modification.  Section 1129(b)(1) is applicable when a class has not accepted the plan and the class is impaired under the proposed plan, which is the case here.  If the proposed plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that are impaired and have not accepted, the court may confirm over objection.  11 U.S.C. § 1129(b)(1).  A plan is deemed fair and equitable with regard to secured claims when the proposed plan provides for the holder of such claim to retain the liens securing their claims and each secured claim holder also receives deferred cash payments totaling at least the allowed amount of such claim. 11 U.S.C. § 1129(b)(2)(A)(i)(I-II).

This court finds that the debtor's proposed plan does not discriminate unfairly against SunTrust and is fair and equitable under the Code.  This finding is based on the fact that the debtor is not currently in default and has never defaulted in making the required plan payments to SunTrust under the plan.  At this point, the debtor is seeking modification in an attempt to increase available capital.  With that capital, the debtor seeks to purchase additional products that will increase and vary its inventory.  Testimony by Matthew Dean established that the added products have been

carefully selected to ensure the debtor will be able to quickly sell them with little to no post-purchase processing required. The different products will allow the debtor to create new accounts and increase cash flowing into the business. The increase in cash flow will serve as a benefit to SunTrust as it has a 100% lien on all of the debtor's accounts receivable. Furthermore, this court finds based on the expert testimony put forth by SunTrust that a borrowing base secured by 60%[3] of asset inventory would be acceptable as commercially reasonable.

      The unforseen changed circumstances in this case justify the modification as to SunTrust. These changed circumstances revolve around the introduction of a new product line in North Carolina. The new product, TimberSIL, was not approved for sale in North Carolina as quickly as the debtor believed. During the confirmation hearing, debtor asserted its cash flow and sales would noticeably increase because TimberSIL is an environmentally attractive product targeted to houses for sale at a lower price point than its typical market. Cash flow and sales have not increased as expected because of the unforeseen delay. When the plan was confirmed, the debtor relied heavily on being the exclusive dealer of TimberSIL in Virginia, North Carolina and South Carolina when drafting the terms of the plan and projecting when they would be able to make payments and how much those plan payments would be on a monthly basis. To date, TimberSIL has not been approved for sale in North Carolina despite the fact that several states across the United States have approved the product. Testimony was proffered by Matthew Dean of Dean Hardwoods that at the time of the confirmation hearing, representatives of Dean Hardwoods and the State of North Carolina had met and Dean Hardwoods was verbally assured TimberSIL would be approved for sale. Notwithstanding TimberSIL's lack of approval, the debtor believes it will be able to make payments to the remaining

---

[3]The debtor originally requested an increase in the borrowing base from 50% to 85%, but conceded at hearing that a borrowing base of 65% would serve its need of freeing up capital.

creditors by August based on increased sales of other product lines. Additionally, the debtor believes that a resolution of it eligibility to sell TimberSIL in North Carolina is imminent.

The facts indicate that Huntington leased the debtor equipment that the debtor uses on a daily basis in the operation of its business. The original confirmed plan allowed for payments to begin to Huntington six months after confirmation, which was February 15, 2010. Payments under the modified plan would not begin until August 15, 2010. With constant depreciation of the value of equipment and the lack of payments being received this court finds that the proposed plan modification is not fair and equitable. Any arrearage payments must be made current immediately and monthly payments as required by the confirmed plan should commence in June 2010.

Based on the foregoing, the debtor's motion to modify the plan is **DENIED** as proposed to Huntington. However, the court **APPROVES** the motion to modify with regards to SunTrust by increasing the inventory borrowing base from 50% to 60%.

**"END OF DOCUMENT"**